UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KYLE WIEGAND,

                          Plaintiff,

          v.                                              Case No. 21-cv-505-pp

SERGEANT TUREK, OFFICER LASEE
and HSU DEPARTMENT,

                          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 6) AND SCREENING
AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

Kyle Wiegand, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983. Before the court had screened the complaint, the plaintiff filed an amended complaint, alleging that the defendants were deliberately indifferent to his threats to harm himself. Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course within" twenty-one days of service or within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). The plaintiff filed his amended complaint two weeks after filing his initial complaint. This order screens the amended complaint, dkt. no. 5, and resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 6.

1

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 6)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let an incarcerated plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 21, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $43.43. Dkt. No. 8. The court received that fee on June 18, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

2

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

3

B.    The Plaintiff's Allegations

The plaintiff alleges that in the evening on November 2, 2020, he "began to have a mentally disturbed mind frame such as feeling suicidal, the urge to self-harm and or hurt others." Dkt. No. 5 at 2. As Officer Lasee walked by the plaintiff's cell, the plaintiff stopped him, told Lasee that he was having these thoughts and that he would need to be placed on observation status "to prevent 'any' harm that could 'befall' from his thoughts." Id. at 2–3. Lasee said he would get the sergeant, but he walked off and did not come back or notify a sergeant about the plaintiff's concerns. Id. at 3.

Later, as Sergeant Turek was conducting his rounds in the prison, the plaintiff stopped him and told Turek about his thoughts of harming himself or others. Id. at 3. He told Turek that he needed to be placed on observation status. Id. Turek said "he would deal with it later" and walked off. Id. at 3. The plaintiff says he "yelled to Sergeant Turek that [he] was self-harming and would not stop until [he] was placed on observation status." Id. Turek continued walking away, so the plaintiff says he "continued to self-harm" by cutting his wrist with a razor. Id. at 3–4.

An inmate came by to pass out the unit phones, and the plaintiff showed him the cut he had inflicted and told the inmate to tell the sergeant. Id. at 4. The inmate notified Turek, and then returned to the plaintiff's cell and told him the sergeant would come by to speak with him. Id. The plaintiff "waited several minutes" before Turek arrived, during which time he continued to self-harm. Id. He says Turek ignored their earlier interaction and "acted as if [the plaintiff]

had only recently informed him" about his self-harming. Id. The plaintiff suspects Turek ignored their earlier interaction "for malicious or sadistic reasons." Id. The plaintiff "pleaded" to be placed on observation status, and Turek requested the razor. Id. The plaintiff gave Turek the razor and placed his hands out his cell trap to be handcuffed. Id. The plaintiff was escorted to observation status in the restricted housing unit. Id.

The plaintiff alleges he was "denied medical attention and/or treatment for [his] injury(s)." Id. But he says that when he reviewed his medical records, they falsely showed he had been seen by the Health Services Unit ("HSU"). Id. He alleges that the HSU retaliated against him by falsifying his records, although he does not say what the HSU was retaliating against him for. Id.

The plaintiff sues Officer Lasee, Sergeant Turek and the HSU in their individual and official capacities. Id. He seeks compensatory, punitive and nominal damages. Id.

C.    Analysis

The court first addresses the plaintiff's claims against the defendants in their official capacities. Claims against a prison official in his official capacity represent another way to plead an action against the entity that he represents or for which he works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiff alleges that the defendants are employees of the Wisconsin Department of Corrections ("DOC") and work at the Green Bay Correctional Institution. The court construes the claims against the defendants in their

5

official capacities as having been brought against the DOC, the agency for which they work. Graham, 473 U.S. at 165-66. Because claims against the DOC are "no different from a suit against the State itself," the court construes the claims as if the plaintiff brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165-66; Monell, 436 U.S. at 690 n.55). But a state is not a "person" against whom the plaintiff may recover monetary damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). Because the plaintiff cannot seek an award of damages from the state (the defendant in the official capacity claims), the plaintiff may proceed on his claims against the defendants in their individual capacities only. The court will dismiss the plaintiff's official capacity claims.

The plaintiff's allegations against Officer Lasee and Sergeant Turek amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition against cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from an inmate's act or threat of self-harm "up to and including suicide." Miranda v. Cty. of Lake, 900 F.3d 335, 349 (7th Cir. 2018). But a prison official who ignores "an insincere suicide

threat from an inmate wanting nothing more than attention" does not violate the Eighth Amendment. Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020).

The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. Farmer, 511 U.S. at 838. Neither negligence nor gross negligence is enough to support an Eighth Amendment claim. Id. at 835-36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001). In short, the evidence must show that the prison officials had "actual, personal knowledge of a serious risk" but failed to reasonably respond to it. Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

The plaintiff alleges that he told Lasee and Turek that he was having disturbed thoughts and needed to be placed on observation status to prevent him from harming himself. He says both officers told him they would help, but both walked away without ordering the plaintiff moved to observation or notifying someone else who could help the plaintiff. He says that when Turek walked away, the plaintiff yelled after him that he would cut himself and then did cut himself. Turek eventually returned and the plaintiff was escorted to observation status. The plaintiff does not describe the severity of his cuts, and

7

the court cannot determine from his allegations whether his threats were sincere or a passing bid for attention couched as a threat to harm himself. Nonetheless, the plaintiff went through with his threats and cut himself with a razor. The court can infer that his self-harm may have been prevented had Lasee or Turek more quickly taken his threat seriously. The court finds that the plaintiff has alleged sufficient facts to allow him to proceed on a claim that Lasee and Turek violated his Eighth Amendment rights by ignoring his threat of self-harm, after which he cut himself.

The plaintiff also alleges that the defendants did not provide adequate medical treatment for his injury. A prison official violates the Eighth Amendment by providing "grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). To state a valid claim of inadequate medical care, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer, 511 U.S. at 834); see Estelle, 429 U.S. at 103.

The plaintiff claims that the HSU failed to treat him. But suing the HSU is no different than suing the State, which as noted above is not a "person" that the plaintiff may sue for damages under §1983. See Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003) (citing Lapides, 535 U.S. at 617; and Graham, 473 U.S. at 166). The plaintiff may not proceed in his claim for damages against the HSU.

Even had the plaintiff named a proper defendant, he says only that he cut himself with a razor and was bleeding. That allegation alone does not allow the court to conclude that he suffered from an objectively serious medical condition that required medical treatment. The plaintiff may have superficially cut himself, causing temporary bleeding that did not require medical intervention. The plaintiff's unclear allegations about his "injury" are insufficient to allow him to proceed on an Eighth Amendment claim for denial of adequate medical treatment for an objectively serious condition.

The plaintiff also frames his claim against the HSU as a claim of retaliation under the First Amendment. To state a claim for retaliation, the plaintiff must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." Felton v. Huibregtse, 525 F. App'x 484, 486 (7th Cir. 2013) (citing Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); and Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). Protected conduct must be some form of speech, such as filing a grievance or lawsuit or complaining about prison conditions. See Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (complaints and grievances); Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020) (lawsuits). The plaintiff does not allege that he engaged in that kind of conduct.

Nor does he suggest that the HSU falsified his records or denied him treatment *because* he cut himself. To show a causal connection between his activity and the deprivation, the plaintiff must show more than that the HSU's

actions occurred after his protected activity. He must show that the defendants knew about his protected conduct and acted because of it. See Healy v. City of Chi., 450 F.3d 732, 740–41 (7th Cir. 2006). In other words, the plaintiff must show that the protected activity "was the but-for cause" of the adverse action. Winston v. Fuchs, 837 F. App'x 402, 404 (7th Cir. 2020) (citing Nieves v. Bartlett, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019) (explaining that the official's retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive")). The plaintiff alleges only that the HSU failed to treat him and falsified his records. He does not allege that the HSU knew he had harmed himself to cause the cut or that the HSU failed to treat him *because* he had harmed himself. He has not stated sufficient facts to allow him to proceed on a claim of retaliation.

### III.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **DISMISSES** the HSU Department as a defendant.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Turek and Lasee. Under the informal service agreement, the court **ORDERS** those defendants to respond to the amended complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$306.57** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 27th day of May, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

12