UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KYLE WIEGAND,

        Plaintiff,

v.                                                              Case No. 21-cv-505-pp

RONALD TURCK and MICHAEL LASEE,

        Defendants.

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING CASE**

      Plaintiff Kyle Wiegand, an incarcerated person who is representing himself, is proceeding under 42 U.S.C. §1983 on Eighth Amendment claims against staff at Green Bay Correctional Institution. The defendants have moved for summary judgment. Dkt. No. 21. The plaintiff has not opposed the motion (although two months ago, the court issued an order requiring him to do so and advising him that his failure to do so would result in the court deeming the motion unopposed and possibly granting it). The court finds that the defendants are entitled to judgment as a matter of law, grants the defendants' motion and dismisses this case.

**I.    Procedural Background**

      The plaintiff filed this lawsuit on April 20, 2021. Dkt. No. 1. At that time, he was incarcerated at Green Bay Correctional Institution. Id. at ¶2. Before the court had an opportunity to screen the complaint, the plaintiff filed an amended complaint. Dkt. No. 5. On May 27, 2022, the court screened the

amended complaint and allowed the plaintiff to proceed on Eighth Amendment claims against defendants identified at the time as Correctional Officer Lasee and Sergeant Turck, in their individual capacities. Dkt. No. 11.

On July 27, 2022, the court entered a scheduling order setting deadlines for discovery and dispositive motions. Dkt. No. 16. The court advised the plaintiff "that it [was] his responsibility to promptly notify the court if he is released from custody or transferred to a different institution." Id. at ¶4. The court warned the plaintiff that his "failure to keep the court advised of his whereabouts may result in the court dismissing his case without further notice." Id. On September 14, 2022, the plaintiff complied with the court's order by notifying the court that he had moved to a different facility and providing his new address at Redgranite Correctional Institution. Dkt. No. 17. That notice is the last time the court heard from the plaintiff.

On February 27, 2023, the defendants moved for summary judgment. Dkt. No. 21. The defendants certified that they sent their motion and supporting materials to the plaintiff at Redgranite. Dkt. No. 21-1. The next day, the court ordered the plaintiff to respond to the defendants' motion by the end of the day on March 29, 2023, under Civil Local Rule 56(b)(2). Dkt. No. 28. The court sent that order to the plaintiff at Redgranite, where he remains incarcerated. See https://appsdoc.wi.gov/lop/home/home (DOC # 684737). The March 29, 2023 deadline has passed, and the plaintiff has not responded to the defendants' motion or disputed the defendants' proposed findings of fact. The court has no reason to believe the plaintiff did not receive the defendants'

summary judgment materials or the court's order directing him to respond by March 29, 2023. On April 12, 2023, the defendants filed a reply brief maintaining their entitlement to judgment as a matter of law. Dkt. No. 29.

Because the plaintiff did not respond to the defendants' motion and supporting materials, the court accepts the defendants' proposed facts as true for purposes of this decision. See Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.").

**II.     The Defendants' Motion**

The plaintiff was incarcerated at Green Bay at all relevant times. Dkt. No. 23 at ¶1. Defendant Ronald Turck was employed as a Sergeant at Green Bay, and defendant Michael Lasee was employed as a correctional officer at Green Bay at all relevant times. Id. at ¶¶2–3.

    A.     The Amended Complaint

The plaintiff signed the amended complaint, which uses the first three pages of the court's standard complaint form for incarcerated persons proceeding without an attorney. Dkt. No. 5. But the plaintiff did not include the final page of that form, which includes the verification "under penalty of perjury that the foregoing is true and correct." See Eastern District of Wisconsin's Guide and Complaint for Prisoner Filing Without a Lawyer) available at https://www.wied.uscourts.gov/forms-pro-se-litigants. Because the amended complaint is not verified, it does not qualify as evidence or as "the equivalent of an affidavit" for purposes of this decision. Devbrow v. Gallegos,

3

Case 2:21-cv-00505-PP     Filed 04/28/23     Page 3 of 15     Document 30

735 F.3d 584, 587 (7th Cir. 2013). The court recounts the allegations in the amended complaint for background purposes only.

As the court summarized in the screening order, the amended complaint alleges that on November 2, 2020,

> [The plaintiff] told Lasee and Tur[c]k that he was having disturbed thoughts and needed to be placed on observation status to prevent him from harming himself. He says both officers told him they would help, but both walked away without ordering the plaintiff moved to observation or notifying someone else who could help the plaintiff. He says that when Tur[c]k walked away, the plaintiff yelled after him that he would cut himself and then did cut himself. Tur[c]k eventually returned and the plaintiff was escorted to observation status. The plaintiff does not describe the severity of his cuts, and the court cannot determine from his allegations whether his threats were sincere or a passing bid for attention couched as a threat to harm himself. Nonetheless, the plaintiff went through with his threats and cut himself with a razor.

Dkt. No. 11 at 7–8. The court accepted those facts as true for purposes of the screening order and determined that they were sufficient to state a claim of deliberate indifferent against Turck and Lasee for "ignoring the plaintiff's threat of self-harm, after which he cut himself." Id. at 8.

The court did not allow the plaintiff to proceed on a claim that unnamed medical staff did not provide him treatment for his injuries. Id. at 8–9. The court explained that the complaint alleged only that the plaintiff "cut himself with a razor and was bleeding. That allegation alone does not allow the court to conclude that he suffered from an objectively serious medical condition that required medical treatment." Id. at 9. The court surmised that "[t]he plaintiff may have superficially cut himself, causing temporary bleeding that did not require medical intervention." Id. The court concluded that the plaintiff's

4

Case 2:21-cv-00505-PP   Filed 04/28/23   Page 4 of 15   Document 30

"unclear allegations about his 'injury' are insufficient to allow him to proceed on an Eighth Amendment claim for denial of adequate medical treatment for an objectively serious condition." Id. The court also did not allow the plaintiff to proceed on a First Amendment claim of retaliation. Id. at 9–10.

B.     November 2, 2020 Incident

On November 2, 2020, the plaintiff was housed in Green Bay's South Hall. Dkt. No. 23 at ¶4. Officer Lasee avers that he was performing his rounds to check on incarcerated persons on the South Hall Unit when the plaintiff told him that he wanted to speak with the sergeant. Dkt. No. 24 at ¶5. Lasee avers that the plaintiff "never said anything to [him] about having harmed himself or planning to harm himself." Id. at ¶6. He says he also "did not observe anything that suggested [the plaintiff] had engaged in, or planned to engage in, self-harm." Id. at ¶7. Once Lasee completed his rounds, he notified Sergeant Turck, who told Lasee that he would follow up with the plaintiff. Id. at ¶8. Lasee had no further interaction with the plaintiff that day. Id. at ¶9.

Sergeant Turck avers that on November 2, 2020, while he was completing medication pass, he spoke with the plaintiff, who asked the sergeant if he could be moved to a different cell. Dkt. No. 25 at ¶¶5–6. The sergeant explained that he "could not move him and that [he] did not have authority to do so." Id. at ¶7. Turck told the plaintiff he would speak with him again after he had completed medication pass. Id. Like Lasee, Turck avers that he "did not observe anything that suggested [the plaintiff] had engaged in, or planned to engage in, self-harm." Id. at ¶8. The plaintiff then asked Turck if he

could be placed on observation status. Id. at ¶9. Turck asked the plaintiff if he was going to hurt himself, and the plaintiff denied that he was going to. Id. Turck avers that he "tried to calm [the plaintiff] down and told him to relax," and he "assured [the plaintiff] that [he] would speak with [the plaintiff] after [he] finished the medication pass." Id.

Turck completed medication pass, which he says typically takes one hour to complete. Id. at ¶10. He returned to the plaintiff's cell to speak with him and saw "superficial cuts" on the plaintiff's wrist. Id. at ¶11. Turck immediately notified his supervisor. Id. at ¶12. He remained at the plaintiff's cell and asked the plaintiff to give him the razor blade he had used to cut himself. Id. at ¶13. The plaintiff complied and gave Turck the razor blade that he had in his cell. Id. Turck placed the plaintiff in handcuffs, removed him from his cell and escorted him to the Restricted Housing Unit with assistance from a lieutenant and Restricted Housing staff. Id. at ¶¶13–14. Medical staff treated the plaintiff once he was in observation. Id. at ¶15. Turck had no further interaction with the plaintiff that day. Id. at ¶16.

The plaintiff's medical records show that he was placed on observation status at 8:00 p.m. on November 2, 2020 based on the "superficial self-harm" in which he had engaged in his cell. Dkt. No. 26-1 at 1. At around 8:30 a.m. the next morning (November 3, 2020), Dr. Harris-Forbes (who is not a defendant) spoke with the plaintiff at his observation cell. Id. The plaintiff showed no signs of hallucinations or delusional thinking, and he reported that "he was doing better today." Id. He told the doctor that "he had been requesting

to speak with staff and had informed them of his thoughts prior to engaging in self-harm." Id. But he also denied having an "intent or plan for self-harm." Id. Restricted Housing Unit staff released the plaintiff from observation that morning, reporting that his "[s]elf-harm was superficial and non-life threatening." Id. at 2. Staff characterized the seriousness of his behavior as "low" and noted that "ER Care" was not needed. Id. Staff again noted that the plaintiff "had attempted to reach out to staff prior." Id. The plaintiff agreed to speak with Psychological Services Unit staff the next day "regarding his ongoing concerns." Id.

The plaintiff's medical notes also show that he had been released from restricted housing on October 30, 2020—only days before the November 2 incident. Id. at 3 (noting the plaintiff's "RHU Release"). The records do not show how long the plaintiff had been in restricted housing before being released on October 30, 2020, id., and the defendants do not indicate why the plaintiff had been in restricted housing earlier.

C.  Summary Judgment Standard

A party is entitled to summary judgment if he shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

D.   Analysis

As the court explained in the screening order, the plaintiff's allegations amount to a claim of deliberate indifference, which the court analyzes under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated person must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from the person's act or threat of self-harm "up to and including suicide." Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018).

The subjective component of an Eighth Amendment violation requires a plaintiff to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez

8
Case 2:21-cv-00505-PP   Filed 04/28/23   Page 8 of 15   Document 30

v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). But "an official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. Farmer, 511 U.S. at 838. Similarly, "[e]vidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference." Rasho v. Jeffreys, 22 F.4th 703, 710 (7th Cir. 2022) (citing Farmer, 511 U.S. at 844; and Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002)).

In short, the evidence must show the prison officials' "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45). This standard imposes "a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" Rasho, 22 F.4th at 710 (quoting Rosario v. Brawn, 670 F.3d 816, 821 (7th Cir. 2012)).

Both defendants aver that they spoke with the plaintiff only briefly on November 2, 2020, and that he did not say anything about harming himself or planning to harm himself. They aver that they did not observe any signs suggesting the plaintiff had engaged in self-harm or was planning to. Officer Lasee says he relayed the plaintiff's request to speak with a sergeant to Sergeant Turck, and he had no other interactions with the plaintiff that day. There is no evidence that the plaintiff told Lasee that he had a razor blade in his cell and that he might use that razor to harm himself. Turck says he spoke

9

Case 2:21-cv-00505-PP    Filed 04/28/23    Page 9 of 15    Document 30

with the plaintiff on two occasions, during which the plaintiff asked only to move to an observation cell. It was not until the second occasion that Turck noticed superficial cuts on the plaintiff's wrist. He responded by immediately notifying his supervisor, taking the razor blade from the plaintiff and safely escorting him to restricted housing. The plaintiff has not contested the defendants' declarations, nor has he provided his own declaration attesting to his version of the events.

There is evidence in the defendants' materials that contradicts some of the defendants' version of events. Dr. Harris-Forbes's observation notes indicate that the plaintiff told her "he had been requesting to speak with staff and had informed them of his thoughts prior to engaging in self-harm." Dkt. No. 26-1 at 1. This evidence shows that long before he filed this lawsuit, the plaintiff told someone else that he had reported to one or both defendants that he was having thoughts of harming himself before he used the razor to cut his wrist. It is possible that a reasonable jury could conclude that the plaintiff's statement to Dr. Harris-Forbes shortly after he cut himself casts doubt on the defendants' assertions, made years later, that he said nothing to them about harming himself. Such doubt could create a genuine dispute whether the plaintiff notified the defendants that he was having thoughts of harming himself before he engaged in self-harming behavior.

The defendants assert that the court should dismiss the case because, even if the defendants knew that the plaintiff posed a risk of harm to himself, the plaintiff cannot show "'that he experienced any cognizable harm.'" Dkt. No.

22 at 5 (quoting Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020)). The defendants note that the plaintiff's medical records describe the cuts that he inflicted on himself as "superficial and non-life threatening" and describe the seriousness of his behavior as "low." Id. (citing Dkt. No. 23 at ¶24). They contend that because the plaintiff's "injuries were trivial and . . . his treating provider assessed his threats of self-harm to be insubstantial, there is nothing in the record to show that [the plaintiff] engaged in anything beyond idle threats of self-harm." Id. at 7 (citing Lord, 952 F.3d at 905).

It is undisputed that the plaintiff's self-harm produced only superficial cuts, and the psychological services staff who observed him in the Restricted Housing Unit concluded that the risk of harm to himself or others was low. It is undisputed that the plaintiff was released from observation status back into the general population after only twelve hours. But as this court recently explained in another self-harm case, Lord controls only where the plaintiff asserts "that he posed a *risk to his life* and that the defendant was deliberately indifferent to that risk." Knight v. Lange, No. 21-cv-616-PP, 2022 WL 16715977, at *10 (E.D. Wis. Nov. 4, 2022). The analysis from Lord does not control where the plaintiff asserts only that the defendants were "deliberately indifferent to the plaintiff's *risk to harm himself*." Id. The amended complaint alleges that on November 2, 2020, the plaintiff "began to have a mentally disturbed mind frame such as feeling suicidal, the urge to self-harm and or hurt others." Dkt. No. 5 at 2. But it does not allege that the plaintiff communicated to the defendants a fear for his life; it alleges only that he told

11

the defendants that he was afraid he might harm himself or others. Id. at 2–3. The plaintiff eventually cut himself with a razor, unlike the plaintiff in Knight who threatened to bite his arm and eventually "bit or chewed 'a quarter size bite wound' on his right wrist." Knight, 2022 WL 16715977, at *10. In Knight, this court first had to "determine whether biting one's arm constitutes a serious risk of harm and, if so, whether the defendant knew the plaintiff was at serious risk of harming himself by biting his arm." Id. There can be no question that cutting one's wrist with a razor poses a serious risk of harm, and the court has determined that there is a possible dispute of fact whether the defendants were aware of the risk that the plaintiff posed to himself. The question is whether the defendants "failed to respond reasonably to that known risk." Id.

The court concludes that the defendants are entitled to judgment as a matter of law because a reasonable jury could not find that the defendants responded unreasonably to the risk that the plaintiff would harm himself. As the Seventh Circuit has observed, "Mental health is notoriously difficult to assess and treat." Quinn v. Wexford Health Sources, Inc., 8 F.4th 557, 569 (7th Cir. 2021). This court has stated that

> [a]rguably, the only way to prevent a determined inmate from harming himself would be to place him in restraints twenty-four hours a day. Even in a bare cell, with continuous monitoring, an inmate could bang his head against walls or doors, or use his own teeth and fingernails to cause serious self-injury before the guards observing him have time to intervene. . . . Short of twenty-four/seven restraint, prison staff cannot guarantee that an inmate will not harm himself.

Sierra-Lopez v. Brown County, No. 17-cv-1222-PP, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019). This court noted in Sierra-Lopez and Knight that

cases in which courts found officer liability or allowed a plaintiff to proceed to trial on the question of liability "generally are limited to those situations in which the guards were essentially asleep at the switch or acted recklessly." Id.; see Knight, 2022 WL 16715977, at *12.

The plaintiff has not shown that here. It is undisputed that, even if the plaintiff notified the defendants before he harmed himself that he was having thoughts of doing so, the defendants responded immediately after each of their interactions with the plaintiff. Officer Lasee avers that on November 2, 2020, while he was conducting his rounds, the plaintiff asked him to speak with the sergeant. Lasee completed his rounds and took the plaintiff's request to Sergeant Turck. There is no evidence that he ever was made aware that the plaintiff had a razor with which he might harm himself. Turck then spoke with the plaintiff during medication pass, and the plaintiff asked to be moved into an observation cell. Turck continued to speak with the plaintiff to calm him down. He told the plaintiff he would complete medication pass and speak with him again, and that is what he did. When Turck returned after completing medication pass, he noticed the superficial cuts on the plaintiff's wrist for the first time. He immediate notified his supervisor, successfully obtained the razor blade from the plaintiff and safely escorted him to the Restricted Housing Unit.

This evidence would not allow a reasonable jury to conclude that the defendants were "essentially asleep at the switch or acted recklessly." Sierra-Lopez, 2019 WL 3501540, at *10. There is evidence that the plaintiff previously was housed in the Restricted Housing Unit only days before November 2, 2020.

But there is no evidence that the defendants knew that he'd earlier been in the unit, or why. See Fitzpatrick v. Nys, 861 F. App'x 108, 112 (7th Cir. 2021) (granting summary judgment for defendant because there was no evidence that the defendant "knew of [the plaintiff's] unstable mental-health history or realized the gravity of his threats" and responded unreasonably). It is possible that, like the November 2-3, 2023 incident, the plaintiff previously spent only a half-day on observation after engaging in similar, superficial self-harm. At most, this evidence could suggest that the defendants were "'negligent in failing to keep a closer eye on [the plaintiff] than they did.'" Sierra-Lopez, 2019 WL 3501540, at *10 (quoting Mathis v. Fairman, 120 F.3d 88, 92 (7th Cir. 1997)). But that potential negligence is insufficient to show deliberate indifference.[1] Id.

### III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 21.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment.

---

[1] The court is granting the defendants' motion for summary judgment on the merits and therefore need not determine whether they are entitled to qualified immunity. See Quinn, 8 F.4th at 569 (affirming grant of summary judgment on the merits and declining to address "whether the individual defendants had qualified immunity"); Sierra-Lopez, 2019 WL 3501540, at *10 (granting judgment in the defendants' favor on the merits and declining to address "whether the defendants are entitled to qualified immunity").

See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 28th day of April, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**